E. W. GRANT, Administrator of Estate of DAVID S. W. HATHAWAY, Deceased, v. CHARLIE A. HATHAWAY and DAVID S. W. HATHAWAY, a Minor, Appellants.

**Division Two, December 15, 1908.**

1. **EJECTMENT: By Administrator: Lands of Decedent.** An administrator in charge of an estate as such does not have authority, under the provisions of the statutes, to maintain ejectment for the possession of a tract of land which belonged to decedent at the time of his death, for the purpose of selling it for the payment of debts against the estate and legacies, and placing the purchaser at such sale in possession, under an order of the probate court having jurisdiction of the estate authorizing the administrator to first take possession of the land before making the sale. The administrator has no title or right to possession of decedent's lands in order that he may sell them to pay debts, nor has the probate court authority to confer on him the right to recover possession for any such purpose.

2. ———: ———: ———: **Rents: Inclusio Unius, Etc.** The express provision of the statute (R. S. 1899, sec. 130), that an administrator may sue in ejectment for the possession of lands belonging to the decedent for the purpose of renting them for a limited time for the payment of debts, is equivalent to saying that he cannot maintain ejectment for the sale of the lands to pay debts or for any other purpose.

Appeal from Callaway Circuit Court.—*Hon. A. H. Waller,* Judge.

REVERSED.

*N. D. Thurmond* and *J. W. Tincher* for appellants.

(1) The will of D. S. W. Hathaway did not specifically devise his land and at his death the title to his land vested in his heirs or legatees and not in the administrator. The authority to sell the land of decedent is given by the statute, section 146, and this power cannot be exercised by the administrator without an order of sale by the probate court. In order that the administrator may sell land to pay debts and legacies the statutes nowhere requires or authorizes the administrator to take possession of the lands. The order of the probate court in this case was in the usual form and did not direct the administrator to take possession of the land, and even if the order did so direct it would be without authority of the law. R. S. 1899, secs. 146-150. (2) The administrator is not authorized to take possession of decedent's lands except under the provisions of section 130, and then only for the purposes therein mentioned. The probate court made no order for the administrator to take possession of and rent the land in controversy, and without such an order the administrator could not maintain an action for the possession of the land even if it was owned by the decedent at his death. The administrator cannot sue in ejection. Burdyne v. Mackey, 7 Mo. 374; Aubuchon v. Lory, 23 Mo. 99; Chambers' Administrator v. Wright's Heirs, 40 Mo. 482; Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418.

*David H. Harris* and *Robert McPheeters* for respondent.

(1) The reason of a law is its life, and in construing it courts look to the purpose in view in its enactment. State ex rel. v. Swanger, 190 Mo. 576; Blandy v. Asher, 72 Mo. 31. The history of a law is an important factor and may always be taken into consideration in construing its meaning. State v.

Balch, 178 Mo. 392; Springfield Gro. Co. v. Walton, 95 Mo. App. 526; Duff v. Karr, 91 Mo. App. 16; Schawacker v. McLaughlin, 139 Mo. 333. The general purpose and object of the statute is never to be overlooked in its construction and application and it should have a reasonable interpretation. Ross v. Railroad, 111 Mo. 18; Carson-Rand Co. v. Stern, 129 Mo. 381. In the construction of a statute it is proper to consider the prior state of the law on the subject and all changes therein. Gabriel v. Mullen, 111 Mo. 119; State ex rel. v. Hostetter, 137 Mo. 636. The effect and consequences of any proposed construction of a law may properly be considered as an aid in ascertaining the probable intention of the lawgiver as expressed in it. Kane v. Railroad, 112 Mo. 34; Bowers v. Smith, 111 Mo. 45; Chouteau v. Railroad, 122 Mo. 375; State v. Slover, 126 Mo. 652; State ex rel. v. Garrett, 76 Mo. App. 303. If a certain interpretation would lead to unreasonable or iniquitous results, it will not be adopted unless such an interpretation is compelled by the language. Moorshead v. Railroad, 119 Mo. App. 576; Hilgert v. Pav. Co., 107 Mo. App. 393. What is within the true intent and spirit of the statute is as much a part of it as its letter. Schawacker v. McLaughlin, 139 Mo. 333. It is one of the well-recognized canons of construction that what is implied in a statute is as much a part of it as if it was expressed. State ex rel. v. Moore, 96 Mo. App. 434. Whenever power is granted by a statute, the grant of the power carries with it, by necessary implication, everything necessary to make the grant effectual. State ex rel. v. Perkins, 139 Mo. 106; Sheidley v. Lynch, 95 Mo. 487; Bryant v. Russell, 127 Mo. 422. (2) If it is necessary to have possession of lands to rent, such possession is certainly necessary in order to effect a sale. Statutes in pari materia are to be construed as one law. State ex rel. v. Slover, 126 Mo. 652; St. Louis v. Howard,

119 Mo. 45. (3) To say that the probate court is without authority to make an order directing an administrator to take possession of a decedent's real estate for the purpose of selling same for the payment of debts and legacies, would, in many cases, render section 146 of our statutes wholly ineffective. One of the absolute essentials or prerequisites of a sale is the power or ability on the part of the seller to deliver possession to the purchaser of the thing sold.

BURGESS, J.—This is an action in ejectment for forty acres of land in Callaway county, Missouri. In January, 1903, David S. W. Hathaway, deceased, of Davis county, Iowa, bargained to purchase two adjoining farms in Callaway county, Missouri, one consisting of 120 acres, and known as the Tyler farm, and the other 160 acres, owned by one Robert L. Smith. For the latter tract Hathaway agreed to pay $5,000. Smith executed a deed, conveying this 160 acres to D. S. W. Hathaway, and left it in the hands of real estate agents at Fulton for delivery to Hathaway. On March 9, 1903, Hathaway, accompanied by his son, Charlie A., and George W. Hamilton, a real estate agent, went to the law office of. T. A. Boulware, in Fulton, and stated to him that he wanted said deed changed so that Charlie A. Hathaway should appear as grantee in the deed instead of D. S. W. Hathaway. Boulware telephoned to Smith for permission to make the change, which permission was given, and the change was made accordingly. The elder Hathaway explained that the deed was made without consulting him, and that he wanted 120 acres of the land conveyed to his son and the remaining forty acres to himself. It was understood by Mr. Boulware that the old gentleman did not have enough money to pay the purchase price of the land, and that the son was to borrow a sum sufficient to make up the deficiency and give a deed of

trust on the land conveyed to him to secure the loan. After leaving Mr. Boulware's office the parties went to the office of Mr. Hamilton, where the latter, as instructed by the elder Hathaway, wrote a deed conveying forty acres of this 160-acre tract to "David S. W. Hathaway, of the county of Davis, in the State of Iowa." Upon the 120 acres remaining in the hands of Charlie A. Hathaway a loan of $1,600 was then effected, and the purchase price of the whole tract of 160 acres paid in full to Smith, the original grantor.

Charlie A. Hathaway had a little son, six years of age, named David S. W. Hathaway, after his grandfather, and he was present while these transactions were in progress; and the defendants claim in their answer to plaintiff's petition, and endeavor to prove, that the grantee named in the deed to the forty acres in controversy was David S. W. Hathaway, minor defendant, and not his grandfather. However, both Mr. Boulware and Mr. Hamilton testified at the trial that it was their understanding that the old gentleman was intended as the grantee and not his namesake grandson. The elder David S. W. Hathaway went into immediate possession of the land in controversy, had it cultivated, and made improvements thereon. After his death, in August, 1903, his son, Charlie A. Hathaway, claimed this forty acres of land for his infant son. There was considerable testimony on the question of ownership of this forty acres, but as it has little or no bearing on the main issue involved, we deem it unnecessary to dwell upon it further.

It developed that the estate of David S. W. Hathaway in Davis county, Iowa, his home, was insolvent, and letters of administration were issued by the probate court of Callaway county to E. W. Grant, of Callaway county, as administrator of the estate of

215 Sup—10

David S. W. Hathaway in said county. Hathaway left a will which was admitted to probate, both in Iowa and Missouri. By this will he bequeathed $5,000 in money to his wife and also left her his residence property in the city of Bloomfield, Iowa. This residence property, however, was incumbered, and was afterwards sold for the payment of the incumbrance. Bequests of $500 each were made to his two children, and the balance of his property was ordered divided equally between his wife and children. Claims of various kinds, amounting to about $1,400, against the estate were allowed, and there not being sufficient personal property either in Iowa or Missouri to pay these debts and legacies, the probate court of Callaway county, upon proper petition of the administrator of the estate in said county, made an order directing said administrator to take possession of the decedent's real estate in Callaway county and to sell the same for the payment of the debts and legacies. The administrator proceeded to have the real estate appraised, and advertised the 120 acres of land known as the Tyler farm and the forty acres of land in controversy for sale. The defendant, Charlie A. Hathaway, together with his infant son, defendant herein, refused to surrender possession of said forty-acre tract, and same was not sold by the administrator. The other 120 acres of land were sold, sale approved, and deed made by the administrator, but the sum realized was insufficient for the payment of the debts and bequests. The administrator then brought this suit for the possession of said forty acres of land for the purpose of enabling him to sell same for the payment of debts and legacies. Trial was had in the circuit court of Callaway county, at the May term, 1905, of said court.

At the close of all the evidence defendants asked for an instruction in the nature of a demurrer to the evidence, which was refused, and defendants duly ex-

cepted. The case was then submitted to the jury upon
the evidence and instructions, and a verdict was re-
turned in favor of the plaintiff. Judgment was ren-
dered accordingly. The defendants in due time filed
a motion to set aside the verdict and for a new trial,
which was overruled. Defendants appeal and assign
error.

The paramount question in this case is whether
an administrator in charge of an estate as such has
authority under the provisions of section 146 *et seq.*,
Revised Statutes 1899, to maintain ejectment for the
possession of a tract of land which belonged to the
deceased at the time of his death, for the purpose of
selling it for the payment of debts against the estate,
and legacies, and placing the purchaser at such sale
in possession, under an order of the probate court hav-
ing jurisdiction of the estate authorizing the admin-
istrator to first take possession of the land before mak-
ing the sale. In short, can an administrator as such
maintain ejectment for the possession of land which
belonged to the deceased at the time of his death?

It is well settled that when a person dies the owner
of real estate or an interest therein, the title, in the
absence of statutory provision to the contrary, des-
cends, *eo instanti,* and vests in the heirs, subject to
statutory rights and incidents of ownership that exist
at common law, as well as to the right of the admin-
istrator to sell the land for the payment of debts
against the estate, and legacies, provided there be not
sufficient personal property to pay them. [Lane v.
Thompson, 43 N. H. 320.] In this event, the author-
ity of the administrator to sell the land relates back
to the time of the death of the intestate, and all cred-
itors have priority over the heirs, and a sale of the
land, in pursuance of an order of the probate court,
for the payment of the debts against the estate, and
the execution of a deed to the purchaser by the ad-

ministrator, will pass the title as against the heirs
or as against any person to whom they may have con-
veyed the land. But until such steps as indicated
are taken by the administrator, the title and rights
of the heirs remain unaffected and unimpaired. [Cal-
houn v. Fletcher, 63 Ala. 574.]    The administrator
having no title or even a right to the possession of
the land, it is difficult to see how the court could
confer upon him the right or authority to recover pos-
session of it in this or any other proceeding.

In this State administrators and executors are
prohibited by statute (sec. 130, R. S. 1899), from
renting or *controlling* the real estate of the deceased,
"unless the probate court having jurisdiction shall be
satisfied that it is necessary to rent said estate for
the payment of debts, and make an order of record
requiring such administrator or executor to take pos-
session of and rent the same for a period not exceed-
ing two years; and upon such order, such executor
or administrator may prosecute and maintain any
action for the recovery of such real estate in the same
manner and with like effect as the testator or intestate
might have done in his lifetime."    This statute not
only does not authorize an administrator to control
or even rent the lands owned by the deceased at the
time of his death, but absolutely prohibits him from
doing so, except for the payment of debts against the
estate; then the obtaining of an order from the probate
court having jurisdiction, authorizing him to do so,
is a prerequisite, and upon such order the executor
or administrator may prosecute and maintain an ac-
tion for the recovery of such real estate in the same
manner and with like effect as the deceased owner
might have done in his lifetime.    There is no pretense
that any such order was procured in this case, or that
the facts in evidence justify any such order.    But
aside from the prohibition of the statute, the express

provision that an administrator may sue in ejectment for the possession of lands which belonged to the deceased for the purpose of renting them out for a limited time for the payment of debts against the estate is equivalent to saying that he cannot maintain ejectment for such lands for any other purpose. That an administrator as such cannot maintain ejectment for the possession of land of which the person whose estate he represents died the owner has been repeatedly decided by this court. [Burdyne v. Mackey, 7 Mo. 374; Chambers' Admr. v. Wright's Heirs, 40 Mo. 482; Thorp v. Miller, 137 Mo. 231; Hall v. Bank, 145 Mo. 418.]

With a due appreciation of the learned and ingenious argument, both oral and written, of counsel for respondent, we are unable to agree with them in their views, but are constrained to hold, for the reasons to which we have given expression, that the administrator cannot maintain this action, and that the court erred in refusing the instruction in the nature of a demurrer to the evidence asked by the defendants.

The judgment is reversed. All concur.