STATE OF MISSOURI ex rel. SPENCER D. BOVARD and JOSEPH F. BEURSKENS, Co-Administrators with Will Annexed of the ESTATE OF JOHN H. BOVARD, Deceased, Appellants, v. MARCEL WEILL and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation.—No. 38843.—182 S. W. (2d) 521.

Division Two, September 5, 1944.

Rehearing Denied or Motion to Transfer to Banc Overruled, October 9, 1944.

*Ernest D. Martin* and *Jay L. Oldham* for appellant.

*Clyde Taylor* for respondent Marcel Weill.

340

*Winger, Reeder & Barker* for respondent Fidelity and Deposit Company.

WESTHUES, C.—Spencer D. Bovard and Joseph F. Beurskens, co-administrators with will annexed of the estate of John H. Bovard, deceased, seek by this proceeding to recover $10,898.73 as damages for an alleged breach of an executor's bond for failure to pay a final judgment allowed by the probate court of Jackson county, Missouri. In a second count of the petition they ask that a judgment for final settlement, entered by the probate court of Jackson county, be set aside. Upon a trial in the circuit court a judgment was entered for the defendants and plaintiffs appealed.

The defendants are Marcel Weill, executor of the estate of Charles Weill, deceased, and Fidelity and Deposit Company of Maryland, a corporation, surety on the executor's bond. To properly understand the issues involved it will be necessary to state the facts rather in detail.

Charles Weill died on October 28, 1933, leaving a large estate which was heavily encumbered. Marcel Weill, his son, was named executor and qualified as such. One of the claims against the estate was a note held by John H. Bovard on which there was due $9,767 and interest. This note was secured by a deed of trust on a parcel of real estate owned by Charles Weill. Prior to the death of Charles Weill, John H. Bovard had been declared to be of unsound mind and Minnie E. Jones was named as his guardian. The estate was pending in the Jackson County Probate Court where also the Weill estate was pending. The property of the Weill estate consisted of approximately forty-three pieces of real estate, nineteen of which were encumbered by mortgages or deeds of trust and twenty-four of which were not so encumbered. Taxes in the sum of about $50,000 were in default. Interest due on the notes amounted to about $22,000. The total indebtedness of the estate was over $332,000. The real estate was appraised at about $464,000, cash on hand totaled about $20,000 and other property was of little value. Practically all of the notes secured by deeds of trust on real estate were in default. The holders thereof were prepared to foreclose as soon as permitted under the statute, which was nine months after Weill's death. The heirs of Weill were fearful of losing all of the estate. This because at that time, 1933 and thereafter, real estate had no market value and no bidders could be obtained at foreclosure sales. Many of the notes secured were of amounts greater than the value of the property and it was doubtful

whether any parcel of mortgaged real estate could have been sold for an amount greater than the note secured thereby. John H. Bovard's note of $9,500 was secured by property appraised at $7,500. The claims of the creditors were presented to the probate court for allowance. The Bovard note was presented and allowed and ripened into a judgment. The heirs, in order to salvage something out of the estate, through the executor and their attorney, devised a plan to have all of the creditors sign an agreement to transfer all of the property, both real and personal, belonging to the estate to a corporation to be held for the benefit first of the creditors and then any surplus to go to the heirs. The corporation was to be managed by three trustees, two of whom were to be selected by the creditors. The holders of the deeds of trust were to retain their security but were not to foreclose for at least a year. This plan was agreed upon by all of the creditors and they signed an agreement to that effect. It was agreed that the estate should be closed and the property thereof handled by the corporation. The corporation assumed and agreed to pay all claims and if there was any balance it was to be paid to the Weill heirs. Minnie E. Jones, guardian for Bovard, filed an application in the probate court for authority to enter into this plan and to sign the contract. This authority was granted and thereafter the estate of Weill was closed by an order of the probate court.

John H. Bovard died on July 28, 1936, and plaintiffs Bovard and Beurskens were appointed administrators of the estate and took charge. They immediately abandoned the procedure pursued by the guardian and ordered a foreclosure of the real estate, which resulted in what may be termed a general rush of other holders of deeds of trust to foreclose on their security. The corporation in order to prevent a disaster then applied to the federal court, under the provisions of section 77B, Bankruptcy Act, for reorganization. The foreclosures which had been commenced were enjoined and the federal court took jurisdiction. The company was reorganized with the approval of the federal court on practically the same plan as before. While the case was pending in the federal court that court ordered a foreclosure of the property covered by the Bovard mortgage and the estate realized about $3200 from the sale. While the matter was still pending in the federal court plaintiffs filed a number of motions for affirmative relief. For example, a motion was filed by them to require the trustees of the corporation to pay taxes on the real estate securing the Bovard note. A motion was also filed to have the trustees turn over to them the rents collected on this property. Plaintiffs objected to the plan of reorganization, which, however, was later approved by the federal court. They accepted the $3200 realized in the foreclosure.

In the plan, as approved by the federal court, income bonds in the new corporation were set aside for the benefit of the Bovard note,

that is, for the deficiency resulting under the foreclosure sale. All of the above facts were not in dispute.

Thereafter plaintiffs filed this suit against Marcel Weill and the Surety Company claiming that the bond had been breached because the executor did not pay in full the judgment of the probate court allowing the Bovard claim. We will consider the points briefed by appellants. They claim that under Secs. 17, 19 Mo. R. S. A., R. S. Mo. (1939), it was the duty of the executor to pay all debts against the estate. Suffice to say on this point that section 17 reads that it is the duty of the executor to ". . . pay the debts and legacies as far as assets will extend . . . " In the case before us there was not enough money to pay the debts. The Bovard claim was not entitled to any priority over the other claims.

Appellants say that the allowance of the Bovard claim by the probate court, unless an appeal was taken, ripened into a final judgment. Cases are cited in support of this contention. Let that be conceded to be the law. Next appellants say that the probate court did not have jurisdiction to entertain an equitable application for authority to release a final judgment by the guardian and curator for the insane ward. The authorities cited are: Sec. 34, Art. VI, Const. of Mo.; State ex rel. Baker v. Daniel E. Bird, 162 S. W. 119, 253 Mo. 569; In re Connor's Estate, 254 Mo. 65, 162 S. W. 252; Primeau v. Primeau, 297 S. W. 382, 317 Mo. 828.

The section of the constitution referred to provides that the probate court ". . . shall have jurisdiction over all matters pertaining to probate business, . . . the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of . . . curators and guardians." In the case of State ex rel. Baker v. Bird, supra, this court condemned a number of holdings in cases pertaining to the jurisdiction of probate courts as going rather far in stripping such courts of all chancery powers and commented as follows:

"Probate courts are specifically vested with jurisdiction to do certain things, and we think they should be permitted to invoke eqitable principles in adjudicating all issues which, by the Constitution or statute, are expressly confided to their care."

In the case of In re Connor's Estate it was held that a probate court was without jurisdiction to make an election for an insane widow in her husband's estate. The petition filed in the circuit court charged that the probate court was adverse to having the widow renounce the will and that the guardian was hostile thereto. We do not think the case in point on the question now under consideration. Primeau v. Primeau, supra, involved a question similar to that in the Bird case, supra. In each the removal of a guardian was before the court and this court held that a probate court could remove a guardian only in

344

cases where it was expressly authorized by statute: See Sec. 495 Mo. R. S. A., R. S. Mo. (1939).

We are of the opinion that the above authorities cited by appellant, when closely scrutinized, sustain the contention that the probate court had jurisdiction to entertain and to sustain the application of the guardian for Bovard. In 25 Am. Jur. 68, sec. 106, the general rule is stated as follows:

"As an incident to the duty of the guardian to enforce his ward's rights and collect claims due to him, a guardian has the power to compromise such claims if they are disputed or if it seems impossible to collect them in full. This power is universally recognized and sustained if the compromise is a reasonable one and made in the honest effort to promote the ward's interests."

If a guardian has the power as above noted then certainly the probate court has jurisdiction to approve the acts of the guardian. There was no showing made nor was it contended that the action of the probate court in approving the application was detrimental to the insane ward's estate. The evidence was to the contrary. It showed that releasing the judgment and entering into the contract with the balance of the creditors was advantageous to the ward. Had the guardian not joined the other creditors the ward's estate would have collected only the amount of cash that would have been obtained at a foreclosure sale of the property covered by the deed of trust. The guardian by entering the contract surrendered no security. By following this procedure it was made possible that a substantial part or perhaps all of the indebtedness be paid. The action of the probate court in sustaining the application did nothing more than approve a contract beneficial to the estate and one which was authorized by law. It was merely incidental to the proper management of the estate of which the probate court had jurisdiction. On the question of the powers of the probate court see the following cases: The State to use of Lancaster v. Jones, 89 Mo. 470, 1 S. W. 355; Scott v. Royston, 223 Mo. 568, 123 S. W. 454, l. c. 460, 461. The latter case was cited with approval in Smith v. St. Louis Union Trust Co., 340 Mo. 979, 104 S. W. (2d) 341, l. c. 344. See also Ross v. Pitcairn, 179 S. W. (2d) 35; In re Mills' Estate, 349 Mo. 611, 162 S. W. (2d) 807, l. c. 810 (2-7). We hold that the probate court had jurisdiction of the question it decided. It is evident that there was no breach of the bond and hence the judgment of the circuit court must and is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.