THE BOATMEN'S NATIONAL BANK OF ST. LOUIS, a Corporation, Executor of the Estate of HUGH W. THOMASSON, Deceased, Appellant, v. ELLA F. BOLLES and ELMIRA TOWNSEND and SAINT PAUL MERCURY INDEMNITY COMPANY OF ST. PAUL, a Corporation.—No. 40065.—202 S. W. (2d) 53.

Division Two, May 12, 1947.

*Chas. Claflin Allen* and *Franklin E. Reagan* for appellant; *Lehmann & Allen, Sievers & Reagan,* and *Adolph K. Schwartz* of counsel.

490

*William R. Gilbert* and *Cullen Coil* for respondent St. Paul Mercury Indemnity Company of St. Paul; *Anderson, Gilbert, Wolfort, Allen & Bierman* of counsel.

*Clem F. Storckman* and *Taylor R. Young* for respondents Ella F. Bolles and Elmira Townsend.

ELLISON, J.—The plaintiff Boatmen's National Bank of St. Louis, executor of the estate of Hugh W. Thomasson, deceased, appeals from an adverse judgment of the circuit court of St. Louis county, in an action at law brought by it against the defendants-respondents, Ella Bolles and Elmira Townsend, former administratrices of said estate, and St. Paul Mercury Indemnity Company of St. Paul,

surety on their administratrices' bond. The amount sued for is $50,000, allegedly due for breach of the bond. The breach charged is that the administratrices failed to account for that sum in their final settlement to revocation and to pay it over to the appellant executor, as required by Secs. 48, 49 and 213[1] of our statutes, when Thomasson's will was discovered and they were supplanted by the executor nominated therein. The will devised his property to the appellant executor as trustee for the State school fund.

The undisputed facts are that the Thomasson estate was financially involved with the deceased's putative widow, Grace Caroline Thomasson, and that the respondent administratrices made a written compromise agreement with her under which they paid her $30,000 of estate funds and contracted to pay her $20,000 more, for the renunciation of all her claims, direct and indirect, against the estate. This compromise agreement was first filed in and approved by the probate court of the City of St. Louis, where the administration was pending, and the administratrices paid the $30,000 in reliance thereon. They took credit for that amount in their final settlement to revocation in the probate court, which was approved, and they were ordered discharged. The executor did not appeal and that order stands to this day as the final order and judgment of the probate court.

The appellant executor contends in the instant action that the administratrices had no power to make the compromise agreement; that they were personally liable thereon; and should have charged themselves with the amount thereof in their settlement to revocation. The respondent administratrices maintain the contrary; and that the probate court's approval of the compromise agreement and its order approving their final settlement to revocation, made the issues in the present action res judicata.

Obviously, this action for breach of the administratrices' bond is a collateral attack on the probate court's order, which was a final judgment so far as the administratrices were concerned. Sec's 48 and 49 of our statutes to provide, and we so held in Young v. Boatmen's Bank, 350 Mo. 1157, 1170, 171 S. W. (2d) 553, 559(12), where the same compromise settlement was involved. But the appellant executor asserts the probate court's order is still subject to collateral attack in this action because it was *void* on its face since the probate court had no *jurisdiction* to make it.

This contention is based on three main theories: (1) that the law did not authorize the administratrices to make *any* contract which would be binding on the estate; (2) the deceased Thomasson's estate consisted mainly of real estate, which descended directly to his heirs (before the will was found), subject only to sale or renting for the

---

[1]All references to our statutes are to R. S. 1939 and same section numbers in Mo. R. S. A. unless otherwise indicated.

payment of debts, and the administratrices could not contract with respect thereto; (3) the contract was without consideration. This calls for a brief review of the facts.

For a detailed showing of the condition of the estate at and before the time the compromise settlement was made, the appellant refers us to the statement of facts in the Young case, supra, [350 Mo. 1. c. 1173(4)-1176, 171 S. W. (2d) 1. c. 561(19)-563.] As appears from that decision, and other sources in evidence, the main assets of Thomasson's estate were two pieces of real estate in the City of St. Louis and several unimproved lots in St. Louis County, the gross value of the whole estate being about $750,000. Substantially $38,000 in accumulated rents were impounded in litigation to which the widow was a party, directly or indirectly, and other rents were accruing.

Various pieces of the real estate had been separately encumbered with deeds of trust severally securing different notes aggregating $415,000 signed by Thomasson; and he and his putative widow also had executed deeds of the real estate. They had been married three times, and after the first of these marriages they had signed a separate maintenance agreement in which he contracted to pay her $1000 monthly. Their last marriage was less than a month before he died childless on January 28, 1933. If Grace Thomasson was his widow and a common law doweress under Sec. 318, she was entitled to a life estate in one-third of his land free of debts; or under Sec's 325(2) and 327 to one-half of his real estate subject to the payment of his debts. Until common law dower was assigned she was entitled to one third of the rents from the land, Sec. 248. And the appellant says in its brief she would also have been sole heir under Sec. 306(3) since Thomasson's other kinsmen were collaterals.

Before Thomasson's death, as early as the fall of 1931, some 35 of his prospective heirs, including the respondent administratrices, had employed attorneys on a contingent fee basis to represent their interests in protecting his body, person and property against the aggressions of his putative wife and certain other persons; to set aside his will, if any were found; and to perform any other legal services necessary in the Probate Court respecting his estate. These attorneys instituted one inquisition in one probate court to determine Thomasson's sanity, and contested another in another probate court. They also brought a suit to contest Thomasson's will, which was in the courts for three years.

About a month after Thomasson's death the respondents Bolles and Townsend were appointed administratrices of his estate in February, 1933, and they employed the same attorneys to represent the estate. It was understood any fee received by the attorneys in that capacity should be taken into account in adjusting their contingent fee contract with the heirs. Over $109,000 in claims were filed

against the estate, nearly all of which were disputed, and claims to about $200,000 were asserted but had not been filed. The probate court, under Sec. 129, ordered the administratrices to rent the real estate to pay debts. The attorneys brought three quiet title suits to clear the title to the estate realty. The attorneys were recognized by the probate court as representing the estate, and on September 20, 1933 the compromise agreement with the putative widow, here involved, was presented to and approved by the probate court. Nineteen court proceedings involving the estate or its property were pending at that time. The court costs and attorney fees in these proceedings were heavy.

Thomasson's will was found and probated on or about October 24, 1933, and the administratrices were superceded by the instant appellant executor the next day. They filed their settlement to revocation on February 3, 1934, and it was approved by the probate court after it had lain on file for over four months, on June 14, 1934. As heretofore stated, no appeal was taken by the executor. During the next three years, while the will was in contest, the executor served as administrator pendente lite. After the will was established the executor as trustee thereunder brought an equitable quiet title suit against Thomasson's putative widow (then married to one Fledderman) and others, to establish its title to the estate realty and to cancel certain notes and deeds of trust thereon. A decree was obtained on December 29, 1942, and affirmed in this court, 352 Mo. 763, 179 S. W. (2d) 102, wherein it was found that all of Thomasson's marriages to the widow were fictitious and void. But this was over eight years after the probate court had approved the administratrices' compromise agreement and settlement to revocation, made under the conditions then existing.

The first of the three contentions advanced by the appellant executor, as stated in the sixth preceding paragraph, is that the compromise agreement made by the administratrices with the widow was void and the probate court had no jurisdiction to approve it, because they had no legal authorty to *contract* with respect to the property of the estate or in its behalf. The authorities cited are 2 Woerner, The American Law of Administration (3 Ed.), sec. 303, p. 972, sec. 356, p. 1181, *757, pp. 1182-3, and Yeakle v. Priest (St. L. Ct. App.), 61 Mo. App. 47, 48-9.

The portions of the Woerner text just cited do state the law as the appellant executor contends. But a few pages later (2 ibid, Sec. *758, p. 1185-6) it concedes that where services are rendered to an executor in behalf of an estate, the contractual claim of compensation does not always lie exclusively against the executor or administrator, but sometimes may be asserted directly against the estate. It further observes there is a judicial trend in that direction "particularly in the Western states." A number of Missouri decisions are cited,

including the Yeakle case, supra; and the text points out that the part of that decision which the appellant executor's brief has quoted here, appears in the opinion of only one judge, Bond, J., the other two judges disagreeing and following Nichols v. Rayburn, 55 Mo. App. 1, to which Bond, J. had dissented, and which held that an administrator may by his contract bind the estate when the statute authorizes him so to do. Specifically the Nichols case ruled an attorney fee is an expense of administration ■■■ which the administrator may charge to the estate up to a reasonable amount, under (now) Sec. 220. That decision was followed by this court in the Young case, supra [350 Mo. l. c. 1167, 171 S. W. (2d) l. c. 557 (1)].

On the same theory, the respondents contend here that the administratrices had the power to make the compromise agreement with the widow and to bind the Thomasson estate thereby, on approval by the probate court, because Sec. 233 authorized it. The statute provides: "Executors or administrators, with the approval of the probate court, may in all cases where they are unable to collect by law compromise any claim against any debtor of the decedent." And, of course, a compromise would be a contract. Wayland v. Pendleton, 337 Mo. 190, 85 S. W. (2d) 492.

Looking first to the question whether the above statute applies under the facts of this case. It will be observed the statute requires three things: (1) approval by the probate court, which was obtained; (2) inability to collect by law; (3) the claim must be against a "debtor" of the decedent. Now it is evident the second of these requirements does not mean literally that the claim must be uncollectible at law; for if it were, it would be valueless and the other party would not compromise on it. Further, that construction would conflict with the meaning of the word "compromise"; which implies mutual concessions on *disputed or doubtful* claims, accepted as advantageous to both contracting parties.[2]

The third requirement of the statute is that the claim must be against a "debtor" of the decedent. In common parlance a debtor is one who owes a debt; whereas here the widow was asserting claims against the estate and more nearly stood in the position of a creditor. But the word debtor in the statute appears to have a meaning broad enough to include "obligors";[3] in the sense of parties who owe an obligation to renounce an asserted claim against the estate. Thus, in Scott v. Crider, 217 Mo. App. 1, 10-14, 272 S. W. 1010, 1011 (2), it was held an administratrix could compromise a claim based on a promissory note given to the claimant by her intestate. And the general rule is that an administrator has the usual powers of a

[2]Webster's New International Dictionary (2 Ed.); 8 Words & Phrases (Perm. Ed.) p. 309.

[3]11 Words & Phrases (Perm Ed.) p. 342; 29 ibid., p. 65.

trustee, including the power to compromise "actions on doubtful claims, as the circumstances of particular cases may justify." This was stated in Jeffries v. Mut. Life Ins. Co., 110 U. S. 305, 309-10, 28 L. Ed. 156, 158, 4 S. Ct. 8, 11, where it was held the power existed before the enactment of the predecessor of our present statute, Sec. 233, supra. There is considerable authority on the point.[4]

■ Appellant's next contention is that even though it be conceded the administratrices had the general or abstract power to compromise claims made by or against the Thomasson estate, still they had no authority to make the compromise agreement involved here, because that agreement was concerned chiefly with the title to Thomasson's real estate, which at the time [the will then not having been discovered] descended directly to his heirs, and with which the administratrices had nothing to do. In short, the appellant executor asserts the administratrices in the compromise agreement were using the estate's money to quiet the heirs' title to the land.

On the other hand, the respondents maintain the compromise agreement dealt largely with monetary claims against the Thomasson estate, including the $415,000 in mortgage notes, the widow's claim of $1000 per month separate maintenance, and the $38,000 impounded rents and other rents accruing. And they argue it was the duty of the administratrices to combat those claims as the appellant in its capacity as ■ executor and trustee has since done in extensive litigation. As regards the real estate, respondents stress Sec. 129 which authorizes administrators to take possession and control of estate realty and to rent it upon order of the probate court, and thereupon to "prosecute and maintain any action for the recovery of such real estate in the same manner and with like effect as the testator or intestate might have done in his lifetime."

It seems to us that the appellant executor's contention is hardly more than an effort to re-litigate the very issues that were decided in the Young case, supra. That was an action in which the attorneys for the instant respondents Bolles and Townsend, as administratrices of the Thomasson estate, were suing the instant executor for services rendered the Thomasson estate in effecting the compromise agreement. One of the executor's main defenses was that the attorneys could not recover for those services, because the title to the estate realty had descended directly to Thomasson's heirs, and the mere power to rent the land to pay debts under Sec. 129 did not authorize the administratrices to file the three quiet title suits, which sought among other things to cancel Thomasson's notes and deeds of trust, or to make

[4]33 C. J. S., p. 1151, sec. 181; 34 C. J. S., p. 344, sec. 469; 23 C. J., p. 1198, sec. 451; 2 C. J., p. 448, sec. 1227; 11 R. C. L., p. 202, sec. 225; 85 A. L. R., p. 176, Annotation; State ex rel. Bovard v. Weill, 353 Mo. 337, 344 (2), 182 S. W. (2d) 521, 523 (4); Jacobs v. Jacobs, 99 Mo. 427, 434 (1), 12 S. W. 457; Mosman v. Bender, 80 Mo. 579, 584.

the compromise agreement and thereby "to purchase adverse claims to the title to the real estate." On the latter point the executor cited the same three cases relied on here.[5] [See abstract of appellant's brief in our official reports, 350 Mo. 1. c. 1159, 171 S. W. (2d) 553.]

We conceded tentatively in the Young case[6] that the administratrices were not authorized by law to bring the three prior quiet title suits, so far as they called for an adjudication of title to real estate—including the cancellation of the deeds of trust on the ground of fraud. But we nevertheless held they did have the right to seek cancellation of $400,000 or more in notes against the estate, as prayed in the quiet title suits. We further pointed out that the compromise agreement covered other adverse monetary claims, such as the title to the impounded and accruing rents exceeding $38,000, and the widow's claim for $1000 per month separate maintenance. So also in the later Fledderman case, supra,[7] where the instant executor as trustee sued to quiet the title to the same land and incorporated allegations that the notes secured by the deeds of trust were void, we held it was entitled to cancellation of the notes in the title suit.

And in the Young case we cited St. Louis Nat. Bank v. Field, 156 Mo. 306(1), 56 S. W. 1095(1), which held that where the probate court had ordered an administrator to take possession of estate realty to pay debts (as here), the land was in custodia legis; and he was a proper party to join in a suit to cancel a deed of trust on the land executed by his intestate, on the ground of no consideration and insolvency of the estate. We further cited cases holding that where real or personal interests are intermingled and involved in the same suit, an administrator may bring or defend it.[8] Our final conclusion on the Young case as a whole was that the compromise agreement was a valid basis for the attorneys' fee claim. And this we think is true regardless of whether the quiet title suits were well brought or not, since their objective was attained by the compromise.

█ And so, since the compromise agreement was valid the order of the probate court approving it was not void; and the order and judgment of that court approving the administratrices' final settlement to revocation, embodying the $30,000 disbursement under the compromise agreement, was a valid final judgment from which no appeal was taken. This, we think, makes the issues here res adjudicata. The █ parties to that final settlement were the same as here—

[5]Chambers, Admr. v. Wright's Heirs, 40 Mo. 482; Grant v. Hathaway, 215 Mo. 141, 114 S. W. 609; McQuitty v. Wilhite, 218 Mo. 586, 592, 117 S. W. 730, 131 Am. St. Rep. 561.
[6]350 Mo. 1. c. 1173-7 (4), 1177 (5), 171 S. W. (2d) 1. c. 561-4 (18-24).
[7]352 Mo. 1. c. 770 (2), 179 S. W. (2d) 1. c. 105 (3).
[8]Young case, supra, 350 Mo. 1. c. 1171, 171 S. W. (2d) 1. c. 563 (22); Butler v. Lawson, 72 Mo. 227, 247-8 (6); Bacon v. DeArmond, 226 Mo. App. 622, 626-7 (8, 9), 47 S. W. (2d) 213, 215 (8, 9); Parker v. Simpson, 180 Mass. 334, 341 (2), 62 N. E. 401, 403 (2).

the retiring administratrices on the one hand and the estate of Thomasson on the other, represented by the present appellant as executor; and the causes of action were the same—the validity of the compromise agreement among other things. This being true the judgment of the probate court was binding on the executor as to points that might have been raised but were not. 34 C. J. p. 805, sec. 1226, p. 818, sec. 1236; 30 Am. Jur. p. 920, sec. 178, p. 923, sec. 179. But even if that were not true, the same issue was raised again in the Young case. And while the administratrices were not record parties to that case, yet it stands as a precedent from which we should not depart, in aid of a collateral attack on the probate court's judgment. Accordingly, the judgment in the instant case is affirmed. All concur.