Edward STRUMBERG, (Plaintiff) Appellant-Respondent,

v.

MERCANTILE TRUST COMPANY, a Corporation, Executor of the Estate of William R. Trogdon, Deceased, and Mercantile Trust Company, a Corporation, Testamentary Trustee for Philip Dwight Trogdon, (Defendants) Respondents-Appellants.

No. 49138.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied May 13, 1963.

Buckley & Campbell, Robert Lee Campbell, St. Louis, for plaintiff-appellant.

Thompson Mitchell Douglas & Neill, James M. Douglas, William G. Guerri,

Richard P. Conerly, St. Louis, Kerth, Thies & Schreiber, Dalton W. Schreiber, Clayton, for respondents, Mercantile Trust Co., Executor of Estate of William R. Trogdon, Deceased, and Mercantile Trust Co., Testamentary Trustee for Philip Dwight Trogdon.

HOLMAN, Commissioner.

Plaintiff, Edward Strumberg, and William R. Trogdon entered into a partnership agreement in January 1945 to establish and operate a business to be known as the Adept Tool and Manufacturing Company, to be located in East St. Louis, Illinois. The agreement contained a provision which reads as follows: "Each party hereto, under the terms of this agreement, shall own an undivided one-half (½) interest in said business, and should either party hereto die while this agreement shall be in force, the remaining party shall within sixty days thereafter purchase the interest of the deceased partner from his heirs, administrators or assigns at a sum not to exceed the book value of his interest at the time of his death, and this agreement shall be binding upon his heirs, administrators, executors and assigns of both parties hereto." Mr. Trogdon died testate April 20, 1960, while residing in St. Louis County, Missouri. He was survived by his wife Virginia, and a 15-year-old son Philip. Mercantile Trust Company was appointed executor of his estate and testamentary trustee for his son. Mercantile was made a party herein, both as executor and trustee. Virginia Trogdon was made a party as an individual and also as guardian for Philip.

In an effort to comply with the foregoing provision of the contract plaintiff caused an audit to be made to determine the book value of the assets of the partnership and defendants' one-half interest was so valued at $15,058.22. On June 14, 1960, plaintiff's attorney mailed a copy of the audit and a cashier's check for $15,058.22 to Mercantile and advised that such was submitted in compliance with the contract provision heretofore quoted, and requested that Mercantile

"proceed to take all steps necessary to transfer the full ownership of Mr. Trogdon's interest in and to the partnership property, both real and personal, to Mr. Strumberg."

When Mercantile failed to take any action plaintiff filed this suit in two counts. In the first count plaintiff sought to enforce his alleged contractual right to purchase the Trogdon interest, as heretofore set out. In the second count he relied upon an alleged subsequent oral modification of said purchase agreement (hereinafter more fully detailed) under which he was entitled to the Trogdon interest without the payment of any money, and a decree was sought ordering defendants to convey the decedent's one-half interest to plaintiff and to return to him the sum theretofore tendered. A trial before the court resulted in a judgment for plaintiff on the first count and for defendants on the second count. Mercantile has appealed from the judgment on Count I, and plaintiff has appealed from the judgment on Count II.

We have appellate jurisdiction because the amount in dispute exceeds $15,000. This for the reason that plaintiff has appealed from the judgment on Count II which adjudged that plaintiff was not entitled to the Trogdon interest without payment, and denied plaintiff's prayer for a return of the $15,058.22 he had tendered to Mercantile.

We will first consider the appeal relating to Count I. As stated in Mercantile's brief, "the sole question we raise on this appeal is the effect of the failure of plaintiff to comply with the provisions of Sections 473.360 and 473.367, RSMo 1959, in that no written notice of the institution of this action in the circuit court was filed by plaintiff in the Probate Court of the County of St. Louis." The statutory provisions relied upon by Mercantile read as follows:

"473.360. 1. Except as provided in sections 473.367 and 473.370, all claims against the estate of a deceased person * * * which are not filed in the probate court within nine months after the first published

notice of letters testamentary or of administration, are forever barred against the estate, the executor or administrator, the heirs, devisees and legatees of the decedent. * * *

"2. Unless written notice of actions instituted or revived under sections 473.363 or 473.367 is filed in the probate court within nine months after the first published notice of letters, no recovery may be had in any such action on any judgment therein against the executor or administrator out of any assets being administered upon in the probate court or from any distributee or other person receiving such assets. * * *

"473.367. Any action commenced against an executor or administrator, after death of the decedent, is considered a claim duly filed against the estate from the time of serving the original process on the executor or administrator, and the filing of a written notice in the probate court of the institution of such action."

(Unless otherwise indicated, all statutory references are to RSMo 1959, V.A.M.S.)

The point here presented is raised for the first time on this appeal. We will nevertheless consider it, as it is now settled in this state that the defense of failure to comply with the nonclaim statutes need not be pleaded, cannot be waived, and, if they are applicable, compliance with said statutes is deemed mandatory and, in effect, jurisdictional. Clarke v. Organ, Mo.Sup., 329 S.W.2d 670; Smith v. Maynard, Mo. Sup., 339 S.W.2d 737; State ex rel. Whitaker v. Hall, Mo.Sup., 358 S.W.2d 845.

This suit was filed on September 3, 1960, which was within the nine-month period. The transcript does not disclose whether or not a written notice of the institution of this action was filed in the probate court, but we consider plaintiff's brief as a tacit admission that such was not filed. It would therefore appear that the ultimate question for our decision is whether the relief plaintiff seeks is a "claim * * * against the estate," as that phrase is used in §§ 473.360

and 473.367. The situation in this case is very unusual, and no case has been cited (nor have we found any) in which the facts are similar.

We have concluded that plaintiff has not asserted a "claim" within the meaning of the nonclaim statutes. As defined in § 472.010(4), " 'Claims' include liabilities of the decedent which survive whether arising in contract or in tort or otherwise, funeral expenses, the expense of a tombstone and costs and expenses of administration." The word "liability," as used in connection with probate matters usually, if not always, refers to a debt or a pecuniary obligation. It has long been held that a suit to recover specific trust assets in the possession of the administrator is not a claim which would be barred by failure to comply with the nonclaim statutes because such assets are said not to be a part of the estate. Bramell v. Adams, 146 Mo. 70, 47 S.W. 931. The situation in the case at bar is somewhat analogous to that which exists in the trust cases. This is not a proceeding for a money judgment against the estate. Plaintiff is not seeking to enforce a personal liability of decedent or to establish a demand which existed against him. And he does not pray for a judgment to be classified and paid out of the assets of the estate.

It should be noted that the contract did not give plaintiff an option to purchase the interest of the deceased partner. Each partner *bound himself* to purchase the interest of the partner first dying. The amount to be paid, "a sum not to exceed the book value," was somewhat indefinite, but that is not important here as plaintiff tendered the book value, which was the most that could have been required. The book value may have been more or less than the market value but, in either event, the surviving partner was contractually obligated to purchase the interest at its book value. The property was in the possession of and being used by the plaintiff. We think it is reasonable to say that, in a sense, the surviving partner became the equitable owner

of the interest upon the death of the other partner, subject however, to the condition that the required amount would be paid or tendered within 60 days. At any rate, it appears clear that the executor was under a duty not to treat the partnership interest in the same manner as other assets, but was required to keep such segregated and apart from the general assets of the estate while awaiting plaintiff's compliance with his contractual obligation to purchase it.

Instead of being a creditor of the estate, plaintiff, upon the death of Mr. Trogdon, immediately became a debtor thereof, i. e., to the extent of the book value of the Trogdon partnership interest. The precise amount of that indebtedness is a matter concerning which the parties might not agree. Plaintiff tendered what he deemed to be the amount of the book value. Mercantile did not accept it. This action is in the nature of a declaratory judgment suit to determine the amount plaintiff owed the estate. In other words, plaintiff is not trying to recover some amount from the estate, but is seeking a determination of the amount he owes the estate. While it is true that plaintiff, upon payment of the proper amount, receives an interest which, in a limited sense, was an asset of the estate, it is apparent that such transfer is merely the performance of an ante mortem contract of the decedent.

For the reasons stated, we rule that the relief sought by plaintiff in the first count of his petition did not constitute a "claim against the estate" within the meaning of that phrase as used in the nonclaim statutes.

In Count II plaintiff alleged alternatively that in March 1949, he and Trogdon, in order to implement the provision of the partnership agreement heretofore set out, consulted with insurance representatives and thereafter agreed as follows: "Plaintiff and William Trogdon each would cause his life to be insured in the amount of $20,000.00 with the Paul Revere Life Insurance Company, and all premiums due and to become due would be paid by the partnership and be charged to the partners

equally. The policy of insurance on each partner's life would be payable as a death claim to the beneficiary then or thereafter designated in the policy by said partner. * * * At the death of a partner, the proceeds of the policy on his life would be paid to the beneficiary designated by him, even though such proceeds should exceed the value of his partnership business, and the surviving partner (1) should be the sole owner of the partnership business and all assets employed therein, both real and personal, tangible and intangible, including the right to use the firm name; (2) should thereupon be the sole owner of the policy on his own life; (3) should assume full liability for and save the estate of the decedent harmless against all partnership debts and obligations; and (4) should pay to the executor or administrator of the deceased partner's estate the excess, if any, of the value of the partnership interest of the deceased over the value as of the date of death of the deceased partner of the proceeds of said life insurance policy on the life of the deceased partner."

On March 4, 1949, a life insurance policy in the face amount of $20,000 was issued to each of the partners by the Paul Revere Life Insurance Company. All premiums on the two policies were paid from partnership funds. After the death of Mr. Trogdon, $20,000 was paid by the insurance company to Mercantile, as testamentary trustee for Philip Trogdon, the beneficiary designated in the policy. Since the amount of the insurance exceeded the book value of decedent's interest in the partnership, plaintiff contends he was entitled to a decree that he was the owner of that interest without the payment of any money to the executor and hence the court should have ordered that Mercantile return the amount he had tendered to it.

Plaintiff offered evidence tending to prove the foregoing allegations. This evidence was admitted over the objections of defendants that it violated the Statute of Frauds and was an effort to vary the terms of a written contract by parol evidence.

O. O. Gillworth testified that he was the agent who sold the policies to the partners. He stated that the partners agreed that upon the death of one the insurance proceeds would be paid to the beneficiary of the policy, and that the survivor would take over the business entirely and the $20,000 would be full payment for the partnership interest, except that if the book value was more than that amount the survivor would pay the amount by which the value exceeded $20,000. This witness, who was 75 years of age at trial time, had no writing or notes concerning the transaction but testified from his memory as to what was said twelve years before.

Plaintiff read from the deposition of Virginia Trogdon (as admissions) the following: "Q. Did you ever hear any discussions concerning the use of insurance funds to make payments for the share of a deceased partner? A. I heard some discussion like that. Q. When did you hear the discussion? A. Just when I don't know. * * * Q. Do you ever recall your husband mentioning the purchase of insurance, or the fact there was any insurance with which to pay for the share of a deceased partner? A. I recall conversations like that, but who with and what the substance was I don't know. I didn't pay any attention to it. Q. Do you ever recall him making the statement to anyone that there was an insurance policy in existence for that purpose? A. Not lately. Q. Do you recall at any time hearing him make that statement? A. Yes, I think so."

At the trial Mrs. Trogdon testified as follows: "Q. Have you ever heard Mr. Trogdon discussing with anyone any insurance for the purpose of purchasing the interest of the deceased partner? A. The conversation I heard was in regard to that. They were talking about doing it. Whether they actually did it or not I do not know. Q. But you did hear discussions between them talking about buying and selling—talking about buying insurance for the purpose of purchasing the interest of the deceased partner? A. Well, they didn't go that far.

They talked about buying partnership insurance at some time or another, but whether they did or not I do not know."

In its findings of fact the trial court found as follows: " * * * [T]hat there was no valid and enforceable agreement between the partners that the proceeds of said insurance policies were to apply toward the purchase price of the interest of the deceased partner, William Trogdon; * * *."

■ The burden was upon plaintiff to prove the alleged oral contract by convincing evidence. On this appeal we review the case de novo, and in so doing, weigh the evidence and reach our own conclusions as to the facts, giving due regard, however, to the more favorable position of the trial court to judge the credibility of the witnesses.

■ Since we have concluded as a fact that there was no agreement between the partners to the effect that the proceeds of the insurance policy, although paid to the beneficiary, would apply toward the purchase price of the interest of the deceased partner, we need not determine questions briefed concerning the admissibility of the foregoing testimony.

The strongest factor which has caused us to find the fact issue against the plaintiff is the conduct of plaintiff during the period from April 20, 1960 (the date of his partner's death) until August 2, 1960. During that time the following occurred:

(1) On May 25, 1960, plaintiff's attorney wrote Mercantile a letter in which the contract purchase provision was set out, and it was then stated that "the purpose of this letter is to advise you that my client, Edward Strumberg, desires to and will comply with the obligation contained in the above-quoted portion of the contract to purchase the interest of William Trogdon at a sum not to exceed the book value of the interest of William Trogdon at the time of his death. At the present time the accountant for my client is computing the book value of this interest at the time of the death of

William Trogdon. Before the expiration of the sixty-day period tender will be made to you of the amount necessary to effect said purchase."

(2) On June 14, 1960, plaintiff's attorney again wrote Mercantile and stated that "we have had the firm of Rogers, Laughlin and Tragesser, Certified Public Accounts, East St. Louis, Illinois, make an examination of the books and records of the Adept Tool & Machine Company to ascertain the book value of William Trogdon's interest in said partnership on April 19, 1960. This examination disclosed that the said value is $15,058.22. We enclose herewith the original of said examination, together with the exhibits referred to therein, with this letter. As required by the said Partnership Agreement, my client, Edward Strumberg, forwards herewith the sum of $15,058.22 in the form of a cashier's check from the First National Bank, East St. Louis, Illinois. Please proceed to take all steps necessary to transfer the full ownership of Mr. Trogdon's interest in and to the partnership property, both real and personal, to Mr. Strumberg."

(3) On June 22, 1960, the attorney representing plaintiff wrote another letter to Mercantile in which he reviewed at length the previous correspondence, and further stated: "We know it is not necessary to impress upon you the need for speed in the handling of this matter. To enable Mr. Strumberg adequately to operate the business which is now legally and morally his, it is important that these matters be settled as promptly as possible."

(4) On August 2, 1960, another letter was written to Mercantile by plaintiff's attorney in which the events that had transpired were again reviewed, and, for the first time, mention was made of the alleged agreement concerning the insurance in a postscript to that letter, which reads as follows: "P.S. A policy issued by the Paul Revere Life Insurance Company upon the life of William R. Trogdon in the amount of $20,000, payable to his wife, was in fact purchased by Mr. Trogdon so that the proceeds therefrom would constitute payment in full to Mr. Trogdon's estate and heirs for Mr. Trogdon's interest in the partnership should he die before Mr. Strumberg. If we are forced to file suit, we shall include a count to impress the proceeds of this policy with a trust for the payment of the consideration for the acquisition by Mr. Strumberg of Mr. Trogdon's interest."

As indicated, we are strongly impressed by the fact that plaintiff corresponded with Mercantile for several months, and unconditionally tendered the amount of the book value of decedent's interest without ever mentioning the alleged insurance agreement. If there had been such an agreement between the partners plaintiff would, of course, have known of it, and, in that situation, it is inconceivable to us that he would have unconditionally tendered the sum of $15,058.22 to Mercantile in payment of the book value of the decedent's interest without making any effort to establish an agreement which would have entitled him to the property without any payment. If Mercantile had accepted the tender it is reasonable to conclude that the alleged insurance agreement would never have been mentioned. While plaintiff presented evidence which tended to support his contention, it was not as convincing as the inferences adverse to plaintiff which must be recognized as a result of plaintiff's failure to assert the contention prior to August 2, 1960.

We have also considered the fact that plaintiff was not called as a witness in the case. While we are mindful of the fact that if objection had been made his testimony would likely have been excluded under the provisions of § 491.010 (the so-called "Dead Man's Statute"), we are nevertheless of the view that he should have offered to testify. As we have recently said, "[T]he statute does not render a witness incompetent for all purposes and therefore, in any event, if the testimony of plaintiffs would have been favorable to their cause, they should have been offered as wit-

nesses and defendants could then have objected or not as they saw fit." Spaeth v. Larkin, Mo.Sup., 325 S.W.2d 767, 772.

For the reasons heretofore stated, the judgment should be affirmed as to each count.

It is so ordered.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.