Norma Faye Adams Lott FLYNN and Norma Faye Adams Lott (now Norma Faye Adams Lott Flynn), Administratrix W.W.A. of the Estate of Augusta Louise Smith, Deceased, Plaintiffs-Appellants,

v.

John C. DANFORTH, Attorney General of the State of Missouri, et al., Defendants-Respondents,

and

Vincent P. Nangle, Jr., et al., Intervening Defendants-Appellants.

Nos. 37241, 37264 and 37265.

Missouri Court of Appeals, St. Louis District, Division Four.

Dec. 7, 1976.

Motions for Rehearing or Transfer Denied Feb. 18, 1977.

Application to Transfer Denied April 11, 1977.

Van Matre & Van Matre, William W. Van Matre, Jr., Mexico, Alvin H. Juergensmeyer, Warrenton, for plaintiff-appellant Norma Faye Adams Lott (now Norma Faye Adams Lott Flynn), Administratrix W. W. A. of the Estate of Augusta Louise Smith, deceased.

Darryl L. Hicks, Warrenton, for plaintiff-appellant Norma Faye Adams Lott Flynn, individually.

Mastorakos & Kopsky, Homer N. Mastorakos, Paul W. Kopsky, Michael J. Doster, Chesterfield, for intervening defendants-appellants Vincent P. Nangle, Jr., Mary R. Nangle, Arthur W. Lamme, Anna Louella Lamme, Edward S. Reifsteck, Geraldine Reifsteck, Homer R. Stude and Wanda M. Stude.

John C. Danforth, Atty. Gen., B. J. Jones, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

NORWIN D. HOUSER, Special Judge.

Action for a declaratory judgment, brought by Norma Faye Adams Lott (now Flynn) in her official capacity as Administratrix cum testamento annexo of the Estate of Augusta Louise Smith, deceased, against the Attorney General, City of Warrenton, The Warren County Library District, by and through its named trustees, and Rosa Adams (who died before trial, leaving Norma the sole heir of Augusta), to construe the Last Will and Testament of Augusta. In a separate pleading, filed in her individual capacity, Norma alleged that a trust created by Augusta's will (leaving the residue of the estate to the Warrenton public library) failed and that the assets of the estate passed to Norma under the laws

of intestacy. Vincent P. Nangle, Jr. and wife, and three other couples, granted leave to intervene, filed an answer asking to be declared owners in fee simple of a certain described tract of 653 acres of land in Warren County by virtue of a deed to them executed by Norma as administratrix. The Attorney General contested the validity of the deed and the authority of the administratrix to convey the real estate by said deed. The trial resulted in a judgment and decree upholding the trust and declaring that the trust did not fail; declaring that the power of sale in Augusta's will was a personal one and that Norma, as administratrix, had no authority to exercise the power and sell the real estate to defendants Nangle, et al.; that the deed was not executed pursuant to the statutes authorizing an administratrix to sell real estate and is void. Intervenors Nangle, et al. filed a motion to modify and amend the judgment to order Norma to repay all amounts of principal and interest paid by them on the purchase price. This motion was overruled without prejudice. Motions for new trial filed by Norma, individually and as administratrix, and by Intervenors, were overruled. Norma appealed in both her individual and official capacities, and Intervenors appealed.

In her last will and testament, executed on May 31, 1945, after providing for payment of debts and funeral expenses and one $50 specific bequest, Augusta in Paragraph 3 devised the residue of her estate "to E. S. Aydelott, in trust for the following uses and purposes: ", followed by three subparagraphs lettered (A), (B) and (C). Subparagraph (A) imposed on the trustee the duty to collect the income and after deducting expenses to pay the net income to Augusta's mother for life. Subparagraph (B) provided that upon the death of Augusta's mother the net income be paid to Norma for her education, and after completion of her education to Norma for her life. Subparagraph (C) provided: "At the death of my mother Augusta Louise Johnson, and my niece, Norma Fay Adams, or in the event that my [m]other and my niece shall precede me in death, then at my death I give, devise and bequeath the residue of my estate, whether real, personal or mixed, unto the Warrenton Public Library of the City of Warrenton, Warren County, Missouri."

Paragraph 4 provided: "I direct that after my executor hereinafter named has finally settled my estate in the Probate Court, he shall then have the Judge of the Circuit Court of Warren County, Missouri, appoint the said E. S. Aydelott as trustee of the trust fund as set out in Paragraph III of this Will. Upon the death or refusal to act of said E. S. Aydelott, then it is my desire that the Judge of said Circuit Court appoint a successor trustee, who shall be a resident of the City of Warrenton, Missouri."

Paragraph 5 provided: "I hereby give to my executor and trustee full power to lease or mortgage the real estate owned by me at the time of my death, or to sell the same either at public or private sale, on such terms and conditions as he may deem advisable and for the best interests of my estate; and said trustee shall report annually all sales and investments relating to my estate, to the Circuit Court of Warren County, Missouri, for approval."

Paragraph 6 provided: "I hereby constitute and appoint E. S. Aydelott executor of this my Last Will and Testament."

E. S. Aydelott and Augusta's mother predeceased testatrix. Norma was appointed administratrix of the estate with the will annexed. In that capacity Norma filed a petition in the Probate Court informing the court that she believed it to be to the best interest of the estate that the 653 acre tract be sold because if left vacant it would depreciate in value, and praying for "an order authorizing her to list said property with Stude Realty Company for $80,000.00." The court made an order, reciting the taking up of Norma's petition to list the real property with the realty company "for the purpose of disposing of same on such terms as can be arranged"; that "it would be to the best interest of said Estate that said property be sold, and therefore orders that

Norma Fay Adams Lott as Administratrix w. w. a. list said property for the purpose of selling and disposing of same on such terms as is marketable and reasonable."

Norma's deed to Vincent P. Nangle, Jr., et al. was headed

### "DEED UNDER POWER OF SALE IN WILL

#### (Section 473.457 R.S.Mo.)"

It recited Norma's appointment as administratrix with the will annexed; that the will empowered decedent's executor "to sell and convey real estate, including the real estate hereinafter described"; that "Under the terms of Section 473.457, R.S.Mo., the First Party, as personal representative of the decedent, is authorized to execute the testamentary power above mentioned"; that decedent's interest has not since her death been conveyed or ordered conveyed by the court; and that "The exercise by [Norma] of the testamentary power above mentioned is not conditioned upon approval by the Probate Court." The stated consideration was $70,000.00. The grantees were to have and hold the property "as fully as [Norma], as such personal representative of the decedent, may transfer and convey the same. The purpose and intent of this deed is to execute fully and completely the power contained in decedent's last will aforesaid." Norma executed the deed in her capacity as personal representative—as administratrix w.w.a. of the estate of Augusta.

Three principal issues are raised on this appeal: (1) whether the deed is valid or void, and if void whether Norma as administratrix should be ordered to return to Intervenors the purchase price and interest paid by them; (2) whether Augusta's will created a valid and binding public charitable trust in favor of the city public library, and if so whether the county library district is the proper beneficiary of that trust under the cy pres doctrine or the doctrine of deviation; and (3) whether the cause should be remanded for further proceedings.

### (1) *On the Validity of the Deed*

The circuit court declared the administratrix' deed void, holding that Norma had no authority to execute the deed under the power of sale in the will; that the power was a personal power granted to E. S. Aydelott alone, beyond the power of Norma to exercise as administratrix, and that the deed was not made pursuant to the statutes authorizing an administrator to sell real estate, Chapter 473, RSMo 1969.

Administratrix Norma and Intervenors contend that the court erred in so holding; that the power was not personal to E. S. Aydelott; that Norma, as administratrix, had authority to enter into this conveyance as a proper exercise of a general power of sale granted in the will; that no order of sale or order by the Probate Court approving a sale was necessary.

Section 473.457, RSMo 1969, dealing with the sale of property under the power granted in a will, follows:

"1. The sale and conveyance of property under a will shall be made by the acting executor or administrator with the will annexed, if no other person is appointed by the will for that purpose, or if such person fails or refuses to act.

"2. Whenever power to sell or otherwise deal with property under a will, by the terms thereof, is personal to the executor therein designated, the court may direct the exercise thereof by a successor executor or administrator or by some other person. The court has full power to supervise the exercise of such powers and to make such orders as are necessary to effectuate the will of testator.

"3. When power to sell, mortgage, lease or exchange property of the estate has been given to any executor under the terms of any will, the executor may proceed under such power, or under the provisions of this law, as he may determine."

At the time the will was executed the predecessor section to Subsection 1 was in force, in form substantially the same (for our purposes) as the present subsection. Subsection 1 covers situations in which the

power of sale conferred in a will is absolute and unconditional; where the testator directs a positive and peremptory sale of the land, unrestricted by conditions or limitations, and no personal trust or discretion is vested in the executor. In such case the power comes within the scope of the official duties imposed by law upon executors, is executorial in nature, inheres in and follows the office, and may be executed by the administrator with the will annexed. *Rawlings v. Rawlings*, 332 Mo. 503, 58 S.W.2d 735 (1933), and cases cited l.c. 737[10]. If the power to sell granted in the will is not a personal power, but is an "official" power inhering in the office of executor or administrator, the power can be exercised by a successor without an order of the probate court, but it terminates with the closing of the estate and must be exercised during the continuance of the administration. That is not the situation in this case. Subsection 1 does not cover this case, in which there was no absolute direction to sell and in which a personal trust was created in which the executor was authorized in the exercise of his discretion and within the limits imposed (but not directed absolutely) to sell.

■ Subsection 2 pertains to personal powers of sale. If a power to sell granted in a will is a personal power the donee is a fiduciary invested with a personal trust independent of the official character of the donee as an executor. A personal power survives the final administration of the estate and continues until the trust is executed or until the donee of the power has had a reasonable time within which to execute the trust. Sales made in the exercise of a personal power need not be authorized or approved by the probate court.

■ Subsections 2 and 3 were first enacted in 1955. Laws 1955, p. 385, § 168. Prior to 1955, upon the death of the donee of a personal power, it was necessary to resort to a court of general equitable jurisdiction for the appointment of a new trustee "with authority adequate to the duties to be discharged." *Rawlings v. Rawlings*, supra, 58 S.W.2d l.c. 737. Subsection 2 was drafted to permit the *probate* court to exercise equitable jurisdiction in dealing with a discretionary or personal power given in a will. See Committee Comment in Historical Note following § 473.457.

■ Whether the power to sell was personal or official depends upon the intention of testatrix, as her intention may be ascertained from the express language of the will. As indicated above, paragraph 5 of the will conferred upon the executor and trustee a permissive power to sell the real estate, investing him with wide discretionary powers within stated limitations, but there was no express or absolute direction or command to sell. " 'If the will confers a power of sale, coupled with a discretion to sell or not as the donee of the power sees fit, the trust is personal, * * *.' " *Rawlings v. Rawlings*, supra, 58 S.W.2d l.c. 737. "Without further elaboration, therefore, it follows that, as the power granted by the will of Thomas Allen vested the donees of the power with a discretion, the power was personal, and not official, * * *." *Donaldson v. Allen*, 182 Mo. 626, 81 S.W. 1151, 1156 (1904). In *Hazel v. Hagan*, 47 Mo. 277, a power clothed in essentially similar language was held to be a mere personal trust, not to be executed by the donee of the power in virtue of her office as executrix, but at any time she might deem it advisable to carry out the design and intent of the testator. So also the language employed by testatrix in this case imposed a personal trust on the executor and trustee, authorizing him to sell, lease or mortgage without limit as to time "on such terms and conditions as he may deem advisable and for the best interest of my estate," subject to approval by the circuit court. This called for the exercise of a wide and a wise discretion and good business judgment. This personal grant of power constituted him a fiduciary agent. Testatrix did not intend that this power terminate with the final settlement of the estate. Placing the estate in trust, after payment of debts and one small bequest, net income payable throughout the continuance of two lives, residue to the library, clearly shows an intention to set up

a long-term scheme of disposing of her property, far beyond the period of administration. Such a plan is inconsistent with the exercise of these powers by an administratrix, whose term of office would normally expire with the final settlement of the estate. Clearly, testatrix did not intend that the power of sale granted Mr. Aydelott end upon his death or refusal to act. Provision was made for the appointment of a successor trustee in either of those events. Cognizant of the then-existing law (under which a successor trustee of a personal power could be appointed only by the circuit court) and apparently in an attempt to avoid the possible exercise of the personal power by a probate-court-appointed successor (which eventually was provided for by Laws 1955, p. 385, § 168), testatrix expressly provided for the appointment of a successor by the circuit court. That testatrix contemplated a continuing administration of the trust through the years is further indicated by her provision in paragraph 5 for annual reports to and approval by the circuit court of all sales and investments.

We are not persuaded by the suggestion that testatrix used the designation "my executor hereinafter named" in paragraphs 1 and 4 but failed to identify him by name or by the use of the words "hereinafter named" in paragraph 5, and that therefore testatrix intended the executor and trustee named in paragraph 5 to be any person administering the estate. The omission appears to have been inadvertent, and the conclusion sought to be drawn is speculative, conjectural, and untenable in view of the considerations to which we have referred.

■ But, say Intervenors, even if the power of sale is construed to be a personal power, Norma had authority to sell the real estate to Intervenors by virtue of Subsection 2 of § 473.457, supra, on the theory that the Probate Court's order to list the property for sale constituted an order to exercise the power of sale. Subsection 2 was enacted ten years after the execution of the will. Assuming but not deciding that Subsection 2 would not be inapplicable

for that reason, we hold that the Probate Court order to list the property for sale did not constitute a direction by the court to exercise the power to sell or a supervision of the exercise of that power within the meaning of the subsection. The order to list appears to have been a preliminary step in assuming jurisdiction to supervise the exercise of the power of sale, but it did not in terms or in legal effect constitute an order to sell the property and was not so intended. That in entering the order to list the probate judge did not intend to authorize or approve a sale is made clear by two letters written by the probate judge to Norma. In these letters the probate judge took exception to Norma's annual settlement showing sale of the property for $70,000 and payment of a broker's commission of $4,200, "all without complying with mandatory provisions by law and without authorization of this court. Consequently, neither the sale or your settlement can be approved." The judge construed the power of sale to be a discretionary power personal to the named executor; one which could not be exercised by a successor as an official power.

■ The power being personal, and not official, it was incumbent upon Norma, the administratrix, who had no mandate from testatrix, to obtain court approval and direction of her exercise of the power of sale, either from the circuit court, in the exercise of its general equity powers, or from the probate court under Subsection 2, if the later-enacted law applies. She could proceed to execute an administratrix' deed without recourse to a court for court approval only in case the will imposed upon the executor an absolute and mandatory obligation to sell the property. For example, see *Earney v. Clay*, 516 S.W.2d 59, 63[4] (Mo.App.1974). Not having obtained the necessary court approval, Norma had no authority to exercise Mr. Aydelott's personal power of sale. Her purported deed to Intervenors was and is null and void, and the circuit court properly ruled the deed invalid.

### (2) *On the Question of a Charitable Trust*

The circuit court found and declared that testatrix created a charitable trust in which the Warrenton Public Library of that city was beneficiary; that the named beneficiary was not in existence at the date of probate of the will, but had merged with and become a part of the Warren County Library District; that the latter should be recognized as beneficiary of the trust.

Norma, in her individual capacity, excepts to the court's findings, claiming testatrix did not intend to and did not in law create a trust with the library as beneficiary; that the Warrenton public library did not merge with and become a part of the Warren County Library District because Warrenton public library was abolished and nonexistent as a legal entity prior to probate of the will; that Warren County Library District was not mentioned in the will, was not intended to be a beneficiary, and should not be recognized as such; that Subparagraph 3(C) of the will is not a devise for a charitable use but an outright devise of the residuary estate to a designated beneficiary as absolute owner; that the named beneficiary having gone out of existence the residuary clause lapsed, and therefore the residuary estate goes to Norma as the nearest heir of testatrix under the laws of intestacy.

The gift to the city public library constituted a public, charitable trust. *Voelker v. St. Louis Merc. Library Ass'n*, 359 S.W.2d 689, 693 (Mo.1962); IV Scott on Trusts, 3rd Ed., § 370, p. 2871. Fourteen years after the execution of the will and ten years before testatrix' death the city library board requested permission to become a part of the county library district, pursuant to § 182.040, RSMo 1969, 1975 Supplement. The trustees of the county library district approved. The city by ordinance abolished the city library and the city notified the county court of its action and requested that the city be included in the county library district levy. The county court passed a resolution ordering that the city become a part of the county library district and that the city be liable for taxes levied for free county library purposes as provided in § 182.040. Thus the city public library, the named devisee, ceased to exist subsequent to the execution of the will and during testatrix' lifetime. It merged into the county library district. The nonexistence of the devisee as a legal entity at the time of testatrix' death, however, did not cause the devise to fail, because of two saving rules stated in Vol. IV of Scott on Trusts, § 397.3: (1) "Where a devise or bequest is made to a charitable corporation which either before or after the death of the testator has been consolidated with another corporation, or has been merged in another corporation, the consolidated corporation or that into which the other has been merged, will be entitled to receive the property, unless the settlor manifested a different intention." Idem, p. 3053. (This common law rule is codified in the case of religious and charitable corporations, § 352.-160, and not for profit corporations, § 355.-215, RSMo 1969.) (2) "*Non-existence.* The question of the failure of the disposition also arises where it is made to a corporation which * * * subsequently ceased to exist. Where the existence of the particular organization is not of the essence of the gift, where the primary purpose of the testator was that the property should be applied to certain charitable purposes, the disposition does not fail." Idem, p. 3048.

The existence of the city library, or the identity of the donee, does not appear to have been of the essence of testatrix' gift. "Where a testator devises or bequeaths property to a charitable corporation to be applied to a particular charitable purpose, it is to be inferred that the application of the property to the designated purpose is the testator's primary intention, and that the choice of the organization to make the application is secondary." Vol. IV, Scott on Trusts, § 397.3, p. 3044, cited with approval in *First National Bank of Kansas City v. Jacques*, 470 S.W.2d 557, 561[5] (Mo.1971). The clear and evident primary purpose, indeed the general purpose, of testatrix was to devote the residue of her estate, following the termination of the life interests, to

the provision of library facilities and services for the benefit of the public in the City of Warrenton. Therefore, although literal compliance with the terms of the gift became impossible upon the abolition of the city library, the nonexistence of the city library as a legal entity at the time of testatrix' death did not effect a lapse or cause a failure of the devise, because under the *cy pres* doctrine, *First National Bank of Kansas City v. Jacques,* supra, 470 S.W.2d l.c. 561[6], the circuit court properly designated the county library district (which provides library facilities and services for the benefit of the public in the City of Warrenton), as the beneficiary of the trust. Such a decision enforces the primary charitable purpose of testatrix as nearly as possible in conformance with her intention. *Thatcher v. Lewis,* 335 Mo. 1130, 76 S.W.2d 677, 682 (1934); 14 C.J.S. Charities § 52 c., p. 514. To declare a lapse and a failure of the trust would frustrate the overriding charitable purpose of testatrix and defeat her obvious wish that Norma be given a life interest and not the residuary estate in fee. The devise will vest upon the termination of Norma's life interest. In the meantime the county library district is recognized as the beneficiary of the residuary devise and bequest, and the county library district will succeed to the residuary estate if at the termination of Norma's life interest it is in existence, functioning and supplying library facilities and services to the public in Warrenton, and if in the meantime the city public library shall not have been re-established.

### (3) *On the Question of Remand*

 The circuit court, sitting in equity, having acquired jurisdiction, should have done full and complete justice in this action for a declaratory judgment, by passing upon the request of Intervenors, under their prayer for general relief and their Motion for Modification and Amendment of Judgment, for a refund of the purchase price paid, together with interest thereon, and should have treated the question of allowance for improvements on the premises. *Metropolitan St. Louis Sewer District*

*v. Zykan,* 495 S.W.2d 643 (Mo.1973); *Linville v. Ripley,* 347 Mo. 95, 146 S.W.2d 581 (1941).

Accordingly, the declaratory judgment dated April 10, 1975 is affirmed as far as it goes, including the appointment of a successor trustee, but the order of July 7, 1975 overruling Intervenors' Motion for Modification and Amendment of Judgment is reversed, and the cause is remanded for a reconsideration of the evidence introduced on the motion; for the conduct of a further hearing and the taking of additional evidence thereon if any party so requests; for the determination of the motion on its merits, and the incorporation into the final judgment of the action of the court on the motion.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.