In re the ESTATE OF Mary M. BASLER, Deceased, Louis Naeger, Ad Litem, Respondent,

v.

Margaret DELASSUS and Gertrude M. Valle, Heirs, Appellants,

Earl Basler, Respondent-Appellant.

No. 66344.

Supreme Court of Missouri, En Banc.

May 29, 1985.

Herbert A. Kasten, Jr., Ste. Genevieve, for appellants.

Albert C. Lowes, W. Eric Cunningham, Cape Girardeau, for respondent-appellant.

Ray Dickhaner, Hillsboro, Frank Elpers, Ste. Genevieve, for respondent.

BLACKMAR, Judge.

This case involves important questions of the power of personal representatives and of the authority of the probate divisions of the circuit courts, under the statutory provisions now in force.

The fact situation is not complicated. The testatrix owned, among other holdings, a 209-acre tract of land in Ste. Genevieve County ("the tract"), which she devised to her four children in equal shares. The children were also the residuary legatees and heirs at law, and so the specific devises were in a sense redundant. She named two of her children as coexecutors, with a grandson as alternate executor, and conferred on "my executor or executors as the case may be" a discretionary power of sale of real and personal property, at a price satisfactory to the selling fiduciary. She also specified that, if the devisees of the tract wanted to sell it, her grandson, Earl F. Basler, (not the grandson named as alternate executor) was to have the "first option to purchase ... at market value."

Earl filed identical pleadings in the regular division and the probate division of the circuit court, in five counts.[1] Count One asserted an oral contract with the testatrix and her husband, who predeceased her, to purchase the tract for $20,000 in considera-

tion for farming it for many years. The remaining four counts sought, in the alternative, monetary awards on various theories with the largest prayer seeking $300,000. The probate pleading was attached to a regular claim form and was not verified.

After Earl filed his claim one of the co-executors filed an application for leave to resign, for removal of the remaining coexecutor, who was Earl's father, and for the appointment of an administrator ad litem. The application was granted and Louis Naeger was appointed. Naeger as administrator ad litem negotiated a compromise with Earl which called for the conveyance of the tract to Earl for a net consideration of $60,000 cash[2] plus the release of all Earl's remaining claims. Two of the devisees of the tract objected to the compromise but the probate division, after hearing evidence, approved it, with the proviso that the land was to be surveyed to settle a dispute as to the acreage and that Earl was to pay for any acres in excess of 209 at the rate of $621.53 per acre.

The objecting devisees appealed from the order of the probate division approving the compromise. Earl appealed from the order of the regular division dismissing his petition for specific performance. The appeals were and remain consolidated. The Court of Appeals, Eastern District, affirmed the judgment of the regular division, but reversed the judgment of the probate division, holding that the real property in issue passed from the testatrix to the four devisees and that the personal representative had no authority to convey it elsewhere in settlement of a claim for specific performance. We granted transfer because of the importance of the case, and take the case as on initial appeal.

Section 473.427, RSMo Supp.1984, reads as follows:

When a claim against the estate has been filed or suit thereon is pending, the credi-

---

1. The regular division of the circuit court dismissed Earl's petition, holding that the probate division had exclusive jurisdiction.

2. The settlement was expressed in terms of a purchase price of $129,900, the inventory ap-

praisal, with the allowance of Earl's claim in the amount of $69,900 and payment of $60,000 in cash. We are told that this arrangement was made for tax reasons.

tor and personal representative, if it appears for the best interest of the estate, may compromise the claim, whether due or not due, absolute or contingent, liquidated or unliquidated.

It is argued for reversal of the probate division that the administrator ad litem had no authority to enter into the compromise, on the following bases: (1) that the personal representative had no authority to enter into an agreement affecting title to real estate because, at common law, "title to a decedent's real estate vests directly in the decedent's heirs subject to administration"; (2) that the power of sale was personal to the named executors and could not be exercised by the administrator ad litem; (3) that Earl had not sought specific performance in accordance with the governing statutes, § 473.303, RSMO Supp.1984 and §§ 473.307 and 473.313, RSMo 1978; (4) that § 473.-427, RSMo Supp.1984, authorizing compromise of claims, has no application to a compromise involving title to real estate, at least when the administration is court-supervised administration rather than independent administration; and (5) that the procedures appropriate to court-approved sale or exchange pursuant to §§ 473.460, 473.490, 473.537 and 473.620, RSMo 1978 were not followed. None of the reasons adduced supports the denial of the owner to compromise the claim here involved.

■ Missouri in 1980 adopted substantial portions of the Uniform Probate Code. The job was patchwork, and some of the existing provisions were continued without harmonization.[3] The general purposes of the revision were: (1) to upgrade the status of the probate courts by establishing them as divisions of the circuit court pursuant to the authority conferred by the revised Article V, Sec. 17 of the Missouri Constitution, adopted in 1976, including the granting of "general equitable jurisdiction"; (2) to vest broader discretion in personal representatives; and (3) to allow greater flexibility in the administration of estates.

■ The compromise of Earl's claim with court approval is consistent with the letter and spirit of the 1980 revision. There are no statutory inhibitions, appropriate procedures have been followed, and the procedural rights of the objecting devisees have been fully respected. The result, under the particular facts of this case, might have been the same had the case come up before the statutory revision. The revision, however, furnishes the occasion to reexamine the maxims and precepts which are adduced to defeat the authority to compromise. We should not take a myopic view of the court's powers because of inappropriate and outmoded analysis.

■ The ancient proposition that real property descends to the heirs or devisees while personal property passes to the personal representative should not bar the attempted compromise of the claim now before us. The objecting devisees do not have a specific right to possession and enjoyment of the tract. It is not Naboth's vineyard (I Kings 21), which even the king could not take by fair means. The tract was devised to four persons, only two of whom objected to the compromise. Any one or more of these could have forced a partition and sale of the tract in accordance with Chapter 528, RSMo. There was no guarantee of specific enjoyment.

■ Further reason for not applying the venerable maxim is that the will granted Earl an option to purchase the tract at "market value," in the event that any of the four devisees wanted to sell. It cannot be objected that two of the four devisees do not desire to sell, for any one of the four has the power to force a sale. The two devisees who did not object presumably want the compromise to be given effect. The property then could have been sold to Earl at market value and a consideration paid to him in compromise of his monetary claims, with the result that he would pay the same amount and obtain the same prop-

**3.** *See* Borron, Independent Administration and Other Probate Matters Under the New Code, 37 J.Mo.B. 13 (1981); Emison, Recent Develop-

ments in Missouri: Probate Code—Real Estate Title Issues, 49 U.M.K.C. L.Rev. 561 (1981).

erty as contemplated by the approved compromise. It is appropriate to allow the fiduciary and the court to achieve directly what could be achieved by artistic indirection.

▮ The presence of the unrestricted power of sale is another circumstance demonstrating that the ancient maxim is not appropriately relied on. A power of sale in a personal representative created by will may be personal to the named fiduciary or may be exercised by the incumbent personal representative, depending on the intent of the testator. *Flynn v. Danforth,* 547 S.W.2d 132 (Mo.App.1976); Houser, J., and cases there cited. A power is considered to be personal if it is independent of and designed to survive the administration. A power which is ancillary to the administration may be exercised by a successor fiduciary. A reading of the Basler will demonstrates that the power of sale is not designed to be personal. The will named coexecutors and an alternate executor. The clause conferring the power did not mention any executor by name, and the clear intendment was to permit its exercise by whatever executor or executors happen to be serving. It of course was entirely appropriate to replace an executor whose son was prosecuting a claim against the estate with a disinterested administrator ad litem, but it would be unfortunate if the serving fiduciary were to be shorn of powers designed by the testatrix to facilitate the administration of the estate. No authority compels such a holding. The administrator ad litem should be able to make use of the power of sale in effecting the compromise.

The Court, furthermore, may authorize a successor personal representative to exercise a power of sale even though the power is personal to a designated executor. Section 473.457, RSMo 1978, adopted in its present form in 1955, reads in pertinent part as follows:

1. The sale and conveyance of property under a will shall be made by the acting executor or administrator with the will annexed, if no other person is appointed by the will for that purpose, or if such person fails or refuses to act.

2. Whenever power to sell or otherwise deal with property under a will, by the terms thereof, is personal to the executor therein designated, the court may direct the exercise thereof by a successor executor or by administrator or by some other person. The court has full power to supervise the exercise of such powers and to make such orders as are necessary to effectuate the will of testator.

\* \* \* \* \* \*

▮ Other objections adduced to defeat the compromise furnish no serious obstacle. The probate division could appropriately treat the copy of the circuit court petition both as a claim and as a petition for specific performance pursuant to § 473.303. The absence of verification is effectively cured by the judgment following the hearing,[4] approving the compromise. The cases cited for the proposition that a suit for specific performance is not a "claim" for probate purposes simply hold that the time limits of the nonclaim statutes do not stand in the way of an action to recover specific real or personal property,[5] and have no application here because of the presence of the alternative claim for monetary relief. Sections 473.260 and 473.263, RSMo 1978, which deal with the personal representative's authority over real estate, contain nothing inconsistent with the result here reached. The former section does not distinguish between real property and personal property, and the latter refers to circumstances under which the personal representative may take possession and have resort to rents and profits, which this

---

4. Section 472.080.2, RSMo 1978 provides that, No defect of form or substance in any petition, nor the absence of a petition, invalidates any proceedings after judgment on the application.

*See also In Re Estate of Anderson,* 544 S.W.2d 35 (Mo.App.1976).

5. *Strumberg v. Mercantile Trust Co.,* 367 S.W.2d 535 (Mo.1963); *Bailey v. Richardson,* 667 S.W.2d 720 (Mo.App.1984).

one does not propose to do. The sections mentioned earlier relating to sale and exchange of real estate might be resorted to in support of a compromise if the need appears, but should not be read as barring compromise under the facts of the case.

Nor does § 473.467.2, RSMo 1978, inhibiting the sale of specifically devised property, stand in the way. The purpose of this section is to allow Naboth to enjoy his vineyard. The specificity of the devise of the tract is tempered by the presence of the power of sale and by the option to purchase conferred upon Earl. The testatrix did not confer upon the objecting devisees a specific power of possession and enjoyment.

■ There is no reason, then, for not applying the very broad statute, § 473.427, which gives the personal representative the authority to compromise claims so long as that compromise is in the best interest of the estate. The law favors compromise. There is no need to apply pre-code concepts so as to forbid this compromise, simply because the objecting devisees own undivided interests in the tract. Nor is it necessary, as the dissent suggests, to refer expressly to the authority conferred by the various sections of Chapter 473. All authorities may be used in effecting the result desired. We do not have to decide whether all claims for specific performance under § 473.303 are subject to compromise absent the special circumstances here present.

The pre-code case of *Boatmen's National Bank of St. Louis v. Bolles*, 202 S.W.2d 53 (Mo.1947), illustrates a situation in which the Court approved an administrator's compromise involving real property. There the Court held that the precursor of § 473.427 did not inhibit compromise of a monetary claim even though the estate consisted substantially of real estate and it was necessary to sell the real estate to obtain funds for the compromise. The Court, citing other cases in a footnotes, said at page 58:

[W]here real or personal interests are intermingled and involved in the same suit, an administrator may bring or defend it.

There the parties objecting to the compromise argued that the fiduciary was bound to resist the monetary claim, even though it posed a substantial threat to the integrity of the estate. This Court held otherwise.

■ So here the objecting devisees argue that the administrator ad litem must oppose the claim for specific performance to the last ditch, even though he might believe that this claim and the attendant monetary claim were menacing and might substantially impair the solvency or liquidity of the estate. We do not know how the claims might ultimately be resolved. The estate might achieve total victory or might suffer total defeat. Uncertainty is the reason for compromise. The objecting devisees of course may differ with the administrator as to the danger posed by the claims and the reasonableness of the compromise, but the probate law confers the authority and the responsibility on the personal representative. It is not necessary to accord a veto power to every tenant in common.

The only reason for allowing the objecting devisees to block the settlement is to guarantee them the enjoyment of specific real estate. As has been demonstrated, neither the law nor the testatrix afforded the objecting devisees this right. The situation bears strong analogy to the doctrine of equitable conversion of real estate.[6] This concept has usually been applied when there is a firm direction to sell, but the rationale is that property subject to such a direction bears a closer resemblance to personal property than to real property. The objecting devisees have, in the last analysis, the right to receive their share of the proceeds of a sale. Their right is essentially a monetary right which they share with others and which should be subject to compromise by the personal representative.

The objecting devisees also argue that the administrator ad litem has not estab-

---

6. *See Skelly Oil Co. v. Ashmore,* 365 S.W.2d 582    (Mo. banc 1963).

lished that the compromise was in the best interest of the estate.

■ The statute gives the initial discretion to approve compromise to the personal representative. He of course acts in a fiduciary capacity, and the beneficiaries may challenge his decision in court. The representative may seek approval in advance, rather than simply putting a compromise into effect and exposing himself to suit. Few compromises would be negotiated if this procedure were not available. So the probate division of the circuit had the authority to approve or to disapprove the compromise. The trial court heard evidence and entered detailed findings. Review of these findings is pursuant to the standard of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

■ The variable factors are the value of the land and the strength of Earl's claims. The trial court found that the inventory valuation of $129,900 was sound, rejecting the objecting devisees' evidence of a higher valuation because he concluded that the properties adduced for comparison were not comparable. This finding is manifestly a finding of fact. The judge found that Earl's claims, both for monetary and for specific relief, presented a risk to the estate. He did not rule as to whether or not the claims were well taken, and was not obliged to do so. The whole purpose of compromise would be defeated if it were necessary to try the whole case to determine whether the compromise should be approved. There was evidence that the compromise would save trial expenses and would be offset in part by savings in estate tax. The administrator ad litem was a certified public accountant. He testified in detail as to the matters he considered in exercising his judgment. He had competent legal advice, both from the attorney initially serving the estate and from another firm he consulted. The record supports the decree of approval and we are not disposed to disturb it.

■ This opinion confirms a transfer of title approved by the court below. The administrator's deed is adequate to transfer the rights of the decedent and of the parties to the suit. The assertion in the dissent that this opinion will have the effect of unsettling titles is unfounded.

The judgments of the probate division and the regular division are affirmed. The case is remanded to the probate division for such further proceedings consistent with this opinion as may be necessary.

RENDLEN, C.J., and HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

WELLIVER, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge, dissenting.

The principal opinion expands the authority of a personal representative as to real property beyond the scope mandated by the legislature. Apart from usurping the legislative role, it endangers the marketability of the real property disposed of in accordance with it. In so doing, it only delays the intervention of the courts in such transfers.

The 1980 revisions of the Missouri Probate Code did not alter probate law to the extent proposed by the Uniform Probate Code. The chief difference concerns the extent to which administration of estates is permitted to proceed independently of court supervision. Under UPC § 3–709, independent administration is the rule unless the will prohibits it or a distributee asks for supervision. In Missouri, however, independent administration is the exception, occurring only if the will so directs or the distributees consent. § 473.803, RSMo Cum.Supp.1984. *See* Borron, Independent Administration and Other Probate Matters Under the New Code, 37 J.Mo.Bar 13, 15 (1981); Emison, Recent Developments in Missouri: Probate Code-Real Estate Title Issues, 49 UMKC L.Rev. 561 (1981); Farmington, Independent Administration, Mo.Bar CLE Estate Administration, § 16.1 (3d ed. 1984); Wellman, Recent Developments in the Struggle for Probate Reform,

79 Mich.L.Rev. 501 (1981). Far from championing sweeping change, "the letter and spirit of the 1980 revision" favor a conservative approach.

Even the limited scope of independent administration permitted by the Missouri statute poses some real dangers to the marketability of real property transferred by those means. *See* Borron, *supra,* at 19–23; Emison, *supra,* at 566–72; Wellman, *supra,* at 533–35. By expanding the opportunities for unsupervised administration, the principal opinion increases the likelihood of such problems in the future.

Because of the generally conservative approach embodied in the 1980 MPC, it is particularly inappropriate to cite it in support of the demolition of the common law rule of the devolution of real property codified in § 473.260. Under that rule, title to a decedent's real property vests directly in the decedent's heirs subject to administration. *In re Dildine's Estate,* 293 Mo. 393, 239 S.W. 112 (1922); *Hill v. Morrison,* 436 S.W.2d 255, 256 (Mo.App.1969). From this it follows that, in general, a personal representative has no interest in, title to, or control over the realty of the decedent, and unless and until authorized to do so by order of the probate court, "is an entire stranger" to the decedent's real property and "has nothing whatever to do with it." *Hill v. Morrison,* 436 S.W.2d at 256.

Nor is this compromise authorized by the power of sale granted in Item Nine of Mary Basler's will. Item Nine reads as follows:

I hereby authorize and empower my Executor or Executors as the case may be in their or its discretion, without order of Court, to sell any and all of the estate of which I may die seized or possessed, or to which I may be entitled at my death, at public or private sale, for cash or partly for cash and partly credit, and upon such terms as my said Executors or Executor shall deem advisable. Such power of sale shall be general and shall not be restricted to purposes related to the administration of my estate, and my Executor or Executors shall retain any of the estate, real, personal, or mixed, which I may own or to which I may be entitled at the time of my death and may deliver and turn the same over to the devisees and legatees herein named in kind.

The Administrator ad litem here is the successor to one of the executors named elsewhere in the will. Whether a successor retains a power of sale depends upon whether the power is administrative or official on the one hand, or personal on the other. Because administrative powers inhere in the office of executor or administrator, they may be exercised by the successor without court order, terminating on the closing of the estate. Personal powers, however, invest the donee with a personal trust independent of the official character of the donee as executor. Typically the donee is given great discretion in its exercise, and the power itself survives until the duty is discharged even if beyond the final administration of the estate. For these reasons, court approval and direction is required for the exercise of a personal power by a successor. *Flynn v. Danforth,* 547 S.W.2d 132, 135–37 (Mo.App.1977). Which power has been granted depends upon the intention of the testator, as "may be ascertained by the express language of the will." *Id.* at 136.

In this case, Article Nine explicitly grants Mary Basler's executors broad discretion in the exercise of the power of sale, and states that the power "not be restricted to the administration of my estate." Her intent, as ascertained from the express language of the will, was patently to confer a personal power on her executors. Such a power may not be passed to subsequent administrators.

The principal opinion correctly points out that § 473.457.2, RSMo 1978, permits the court to direct the exercise of a personal power by a successor. The probate court's order appointing the administrator ad litem here, however, makes no mention of the exercise of any personal powers. It merely states that Louis Naeger would be a qualified and disinterested administrator ad li-

tem, and appoints him to serve during the pendency of the action brought in the circuit court by Earl Basler. Such an order does not constitute a direction by the court to exercise the power to sell or a supervision of the exercise of that power within the meaning of that subsection. *See Flynn v. Danforth*, 547 S.W.2d at 137.

Finally, § 473.427, RSMo Cum.Supp. 1984 (amended, effective January 1, 1981), does not provide statutory authorization for compromise in this case. Section 473.-427 reads as follows:

> When a claim against the estate has been filed or suit thereon is pending, the creditor and executor or administrator, if it appears for the best interest of the estate, may compromise the claim, whether due or not due, absolute or contingent, liquidated or unliquidated.

There are at least two reasons why this statute does not authorize the compromise at issue. First, insofar as Earl's "claim" is for specific performance of the alleged oral contract to convey the farm, it is not open to compromise under § 473.427. As construed by our courts, the term "claim" in Chapter 473 does not include actions for specific property, whether real or personal. *Strumberg v. Mercantile Trust Co.*, 367 S.W.2d 535 (Mo.1963); *Bailey v. Richardson*, 667 S.W.2d 720 (Mo.App.1984). For this reason, only those allegations of money damages in Earl's petition before the circuit court would be subject to compromise. In addition, § 473.313, RSMo 1978, mandates the exclusive procedure for determining entitlement to specific performance of a contract to convey a decedent's real estate: "A party entitled to specific execution of a contract for the conveyance of real estate *shall* proceed in the probate division of the circuit court *under sections 473.303 and 473.307.*" (Emphasis added). Such mandatory procedures cannot be circumvented by attempting to obtain specific performance through a compromise with the personal representative.

In sum, the compromise agreement proposed in this case is not sanctioned by the 1980 MPC, other statutes or case law, or the will itself.

I respectfully dissent.